UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL & TINA CARPENTER,                     REPORT & RECOMMENDATION
                                              and DECISION & ORDER
                    Plaintiffs,
                                              09-CV-6552T
              v.

CHURCHVILLE GREENE HOMEOWNER'S
ASSOCIATION, et al.,

                    Defendants.

_____


### PRELIMINARY STATEMENT

         Plaintiffs Michael and Tina Carpenter have brought this suit against the

Churchville Greene Homeowner's Association (the "HOA"), its board members and property

manager, alleging disability discrimination in violation of the Fair Housing Act, Title VIII of the

Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601 *et seq*.  (Docket # 26).

         The Carpenters both have disabilities that affect their mobility and require them to

use wheelchairs.  (Docket # 26 at ¶¶ 4, 12-15).  The Complaint alleges that defendants have

discriminated against them on the basis of their disability by refusing to permit their disabled

guests to park on the road in front of their house, rather than in a "remote" parking lot.  (*Id*. at

¶¶ 32-33, 51).  The Answer asserts, *inter alia*, that on-street parking in their housing

development is "unsafe if not illegal."  (Docket # 28 at ¶ 19).

         Plaintiffs filed this action on November 2, 2009.  (Docket # 1).  Thereafter,

plaintiffs amended their complaint to assert additional claims for failure to permit a reasonable

modification to their property and for retaliation in connection with the plaintiffs' request that the

HOA allow them to replace broken paving stones in their yard with a concrete pad.  (Docket # 26).  Specifically, plaintiffs allege that the HOA withheld permission to install the concrete pad as retaliation for filing the instant lawsuit.  (*Id.*).  On February 22, 2011, United States District Judge Michael A. Telesca granted defendants' motion for summary judgment on plaintiffs' reasonable modification claim because it had been resolved by the parties.  (Docket # 73).  Plaintiffs' discrimination and retaliation claims remain pending.  (*Id.*).

Three motions are before the Court for decision.[1]  First, defendants seek to amend their answer to assert a new affirmative defense.  (Docket # 65).  Second, plaintiffs have moved for an order determining that two emails should be protected from disclosure under the work product doctrine; defendants have simultaneously moved to compel their production.  (Docket ## 67, 68).

## DISCUSSION

### I.  Motion to Amend Answer

#### A.  Facts

Plaintiffs' amended complaint was filed on May 4, 2010.[2]  (Docket # 26).  Defendants filed an amended answer on May 22, 2010.  (Docket # 28).  Defendants now seek to amend their answer in order to clarify two affirmative defenses and to add a fifth affirmative defense that plaintiffs failed to exhaust their administrative remedies before filing the retaliation

---

[1]  Defendants also filed an earlier motion to compel (Docket # 66), but withdrew that motion at oral argument on April 21, 2011, pursuant to an agreement between the parties.  Accordingly, defendants' motion to compel (Docket # 66) is denied as moot.

[2]  Defendants have been aware of plaintiffs' proposed amendments since January 13, 2010, when plaintiffs filed their motion to amend their complaint.  (Docket # 11).

claim.  (Docket # 65 at ¶¶ 4, 7).  Specifically, defendants allege that, with the assistance of Judge

Telesca, the parties settled the dispute over the concrete pad in November 2009 before the HOA

board had the opportunity to fully consider plaintiffs' modification request.  (*Id*. at ¶ 7).  On these

facts, defendants contend that plaintiffs' retaliation claim is foreclosed by their failure to exhaust

administrative remedies.  (*Id*.).

Pursuant to this Court's scheduling order, the deadline to amend pleadings was

November 1, 2010, a year following the parties' resolution of the concrete pad dispute.  (Docket

# 14).  Nearly two months after the deadline, on December 23, 2010, defendants notified

plaintiffs of their desire to assert an exhaustion of administrative remedies affirmative defense.

(Docket # 65 at ¶ 11).  The instant motion was filed on January 28, 2011.

Defendants explain that they waited to move to amend because they expected that

a decision on their summary judgment motion would obviate the need to amend their answer.[3]

(*Id*.).  Defendants' counsel also represents that, despite the scheduling order deadline, he believed

that affirmative defenses could be added through the summary judgment stage of a litigation.  To

the extent that he was mistaken, counsel characterizes that misunderstanding as "excusable

neglect" under Rule 6(b) of the Federal Rules of Civil Procedure, which permits the court to

extend a deadline for good cause "if the party failed to act because of excusable neglect."  Fed. R.

Civ. P. 6(b)(1)(B).  (*See* Docket ## 81 at 5; 81-1 at ¶ 6).  Finally, defendants maintain that

plaintiffs would not be prejudiced by the proposed amendments.  (Docket # 81-1 at ¶ 7).

---

[3]  Judge Telesca did dismiss the modification claim on February 22, 2011, but left the retaliation claim intact.  (Docket # 73 at 2 n.3).

Plaintiffs oppose the amendment on the grounds that it is untimely and that "good cause" for the late amendment has not been demonstrated.  (Docket # 75).

### B.  Analysis

In determining a motion to amend filed after a court-ordered deadline for amending the pleadings, a court must balance the requirements of Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  Rule 15(a) provides that once the time for amending a pleading as of right has expired, a party may request leave to amend, which "the court should freely give . . . when justice so requires."  Fed. R. Civ. P. 15(a).  Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 16(b) directs the court to enter a scheduling order that limits the time to amend the pleadings.  Fed. R. Civ. P. 16(b)(3).  Moreover, the rule also provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  *See Parker v. Columbia Pictures Indus.*, 204 F.3d at 340.

4

In *Parker*, the Second Circuit addressed the showing required of a party moving to amend its pleadings after the time set by the court for filing such motions.  204 F.3d at 340.  In that case, the court joined several other circuits in holding that "the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."  *Id*. (collecting cases).

According to the Second Circuit, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340.  *See Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y. 1996) ("[i]n instances where . . . a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his or her neglect and delay") (internal quotation marks omitted) (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984)).  "Good cause," the court reasoned, "depends on the diligence of the moving party." *Parker*, 204 F.3d at 340.  *Accord Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (court's primary consideration in determining whether a movant has established good cause is "whether the moving party can demonstrate diligence"); *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligence").

In deciding whether to grant a motion to amend, the court must weigh the good cause shown for the delay against the prejudice to the non-movant that will result from the

amendment.  *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983).

Considerations of prejudice include whether the new claim would:  (1) require significant

additional discovery; (2) significantly delay the resolution of the dispute; or (3) prevent the

non-moving party from bringing a timely action in another jurisdiction.  *Block v. First Blood

Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).  "However, the absence of prejudice to a nonmoving

party does not alone fulfill the good cause requirement of Rule 16(b)."  *Woodworth v. Erie Ins.

Co.*, 2009 WL 3671930, *3 (W.D.N.Y. 2009) (citing *Estate of Radcliffe v. Pradera Realty Co.*,

2007 WL 3084977, *1 (S.D.N.Y. 2007)) (emphasis omitted).

Rather than address the Rule 16(b) "good cause" standard, defendants contend

that the "excusable neglect" standard under Rule 6(b) should apply here.  (Docket # 81 at 5).

Under that Rule, "the court may, for good cause, extend the time . . . on motion made after the

time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).

Interpreting Rule 6(b), the Second Circuit has held:

> To determine whether a party's neglect is excusable, a district court
> should take into account: [1] [t]he danger of prejudice to the
> [opposing party], [2] the length of the delay and its potential
> impact on judicial proceedings, [3] the reason for the delay,
> including whether it was in the reasonable control of the movant,
> and [4] whether the movant acted in good faith.  As these factors
> suggest, excusable neglect is an elastic concept, that is at bottom an
> equitable one, taking account of all relevant circumstances
> surrounding the party's omission.

*Tancredi v. Met. Life. Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004) (internal quotations and

citations omitted).

The deadline at issue in the instant motion is the deadline for amending the

pleadings.  Rule 16 specifically provides that a scheduling order "must limit the time to . . .

6

amend the pleadings." Fed. R. Civ. P. 16(b)(3). Thus, the good cause standard expressly

adopted by Rule 16 governing the amendment of a scheduling order deadline must govern here.

*See*, *e.g.*, *Corkrey v. Internal Revenue Svc.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000) ("[b]ecause the

rule which authorized the scheduling order contains a specific provision governing the relief

sought here, it is that rule which governs the motion . . . rather than Rule 6(b)"); *Carnrite v.*

*Granada Hosp. Group, Inc.*, 175 F.R.D. at 448 (Rule 16(b), not 6(b), applies to scheduling order

deadlines, including deadline for motions to amend pleadings). *See also Blasi v. New York City*

*Bd. of Educ.*, 2008 WL 2705373, *1 n.1 (E.D.N.Y. 2008) (both Rules 16(b) and 6(b) require a

showing of good cause). For this reason, I decline to apply the Rule 6(b) excusable neglect

standard to defendants' motion. *See Michael Grecco Photography, Inc. v. Everett Collection,*

*Inc.*, 2008 WL 4580024, *2 (S.D.N.Y. 2008) ("'[g]ood cause' requires a greater showing than

'excusable neglect'").

Defendants contend that a motion to amend may be granted even without a

showing of good cause where the opposing party would not be prejudiced. (Docket # 81 at 4).

Authority in this Circuit exists to support that contention. *See*, *e.g.*, *Nycomed U.S. Inc. v.*

*Glenmark Generics Ltd.*, 2010 WL 1257803, *11 (E.D.N.Y. 2010) ("delay alone, in the absence

of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend"); *New*

*Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, 2009 WL 1515696, *4 (S.D.N.Y. 2009)

(permitting amendment, which was based upon facts known at the time of the original complaint,

in the absence of showing of prejudice). As this Court has recently observed, a review of the

caselaw in this Circuit reveals a split of authority on the issue of whether the moving party must

make a threshold showing of good cause before the Court considers prejudice or whether

prejudice should be considered irrespective of good cause.  After consideration of the relevant Second Circuit law, this Court finds that the former is the better approach and the one that has been most consistently followed in this district.  *See Woodworth v. Erie Ins. Co.*, 2009 WL 3671930 at *3 ("the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b)").

Defendants also maintain that new affirmative defenses may be added as late in the pretrial proceedings as the summary judgment phase.  (Docket # 81 at 3).  In support, they cite *Saks v. Franklin Covey Co.*, in which the Second Circuit observed, "[n]otwithstanding a defendant's failure to timely plead the preemption defense, a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings."  316 F.3d 337, 350 (2d Cir. 2003) (citing *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000)).  *Saks*, however, does not reveal whether a Rule 16 scheduling order had issued in that case, *see* 316 F.3d 337, nor do other Second Circuit cases determining that affirmative defenses may be asserted for the first time on a motion for summary judgment, *see*, *e.g.*, *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275; *Block v. First Blood Assoc.*, 988 F.2d 344.  For that reason, I adhere to my view that, where a scheduling order has issued establishing a deadline for motions to amend pleadings, motions to amend to assert affirmative defenses must be filed by that deadline unless good cause can be established for an extension.

Against this backdrop, I turn to whether defendants have demonstrated the requisite diligence to satisfy the good cause standard under Rule 16(b).  On the record before me,

8

I conclude that they have not.  Plaintiffs filed their amended complaint in May 2010.  Defendants were certainly aware at that time of the facts giving rise to their exhaustion of administrative remedies defense.  Rather than assert it at that time, however, defendants waited until the end of January 2011, nearly three months after the deadline to amend had expired.

Although a delay of three months is not necessarily fatal to a motion to amend, *see*, *e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803 at *11 (granting motion to amend filed three months after newly-discovered evidence); *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, *10 (S.D.N.Y. 2010) (granting motion to amend filed six months after discovery of new evidence); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (granting motion to amend filed two months following discovery of new evidence), here defendants had the facts to assert the defense as soon as plaintiffs filed their amended complaint in May 2010 – nine months before they filed their motion.[4]  They evidently made a strategic decision to await Judge Telesca's summary judgment decision, while at the same time participating in the discovery process.  Not until December 2010 – after the deadline had expired – did they first notify plaintiffs' counsel of their desire to amend.  These facts do not establish good cause.  *See*, *e.g.*, *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, 2009 WL 2432729, *3-4 (S.D.N.Y. 2009) (denying motion to amend answer filed seven months after scheduling order deadline and five months after discovery of alleged new evidence where defendant was on notice of its proposed amendments at time original answer was filed), *aff'd*, 2010 WL 743793 (S.D.N.Y. 2010); *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215

---

[4]  Indeed, defendants knew the facts upon which to base this affirmative defense at least as early as January 13, 2010, when plaintiffs first moved to amend their complaint to assert the modification claim relating to the concrete pad dispute.  (Docket # 11).

F.R.D. 100, 104 (S.D.N.Y. 2003) (denying motion to amend answer filed four months after the scheduling order deadline where defendant knew of its proposed counterclaim when it filed original amended answer).

Finally, I do not reach the issue of prejudice in light of my finding that defendants have not demonstrated good cause for the amendment. *Woodworth*, 2009 WL 3671930 at *3. Accordingly, I recommend that the district court deny defendants' motion to amend their answer as untimely,[5] except to permit them to make minor amendments to their previously-asserted affirmative defenses. Those amendments merely clarify, but do not alter the affirmative defenses in any substantive manner.[6]

## II.  Plaintiffs' Motion for a Protective Order and Defendants' Motion to Compel

### A.  Facts

These motions concern two emails, which this Court has reviewed *in camera*, that plaintiffs contend are protected from disclosure by the work product doctrine. The first was sent from plaintiffs' counsel, Laurie Lambrix ("Lambrix"), to "Paul and Cara" on July 7, 2010. Paul Surace ("Surace") owns Abrazo Construction Company ("Abrazo"), the contracting company that installed the concrete pad at issue in the retaliation claim. Cara Thibeault ("Thibeault") is Abrazo's office manager, though apparently not an employee of the company, and Surace's

---

[5]  At oral argument, this Court questioned the legal viability of an exhaustion of administrative remedies defense to a Fair Housing Act claim; however, plaintiffs have not argued that the defense is futile.  (Docket # 75).

[6]  Specifically, I recommend that defendants be permitted to modify the language of the Second Affirmative Defense to read, "Permitting parking in the areas proposed by Plaintiffs would be unsafe *and* illegal," and the Third Affirmative Defense to read, "Plaintiffs' claim regarding the construction of the concrete pad is moot *because of an accord and satisfaction that was reached by the parties on or about November 24, 2009.*"  (*See* Docket # 65-2 at ¶¶ 20, 21) (emphases added).

girlfriend.  (Docket ## 77, Thibeault Affidavit at ¶ 1; 82, Ex. D at 11).  The July 7 email

forwards to Surace and Thibeault a draft of Surace's affidavit that Lambrix was preparing to file

in opposition to defendants' first motion for summary judgment.  The email asks them to review

the draft, recounts information from Lambrix's notes of her earlier meeting with Surace and

Thibeault and poses follow-up questions concerning Surace's conversations with various

representatives of the property management company about the concrete pad proposal.  The

second email, sent by Thibeault to Lambrix four days later on July 11, 2010, suggests revisions to

Surace's affidavit.

On October 6, 2010, defendants subpoenaed Abrazo to provide deposition

testimony and documents.  (Docket # 68-1 at ¶ 5).  The subpoena demanded production of "[a]ny

and all documents concerning any work performed" at the Carpenters' home.  (*Id.*).

Surace was deposed on November 17, 2010, and testified in response to questions

about the preparation of his affidavit:

> Q.  By the way, before you signed this affidavit, did you have an
> opportunity to review it?
>
> A.  Yes, I did.  I did read this, uh huh.
>
> Q.  So is it accurate to say a draft was sent to you for you to
> review?
>
> A.  Yes.
>
> Q.  Do you remember making any comments, "This is accurate" or
> "I think this sounds better"?
>
> A.  I may have.
>
> Q.  Do you remember whether that comment was provided over the
> phone or letter, email?

A.  It could have been both.

Q.  Could have been both.  Do you remember how this draft came to you?

A.  I think I went to – well, I went to her office to – questions she gave me and I answered.

Q.  When you say "her," you're referring to –

A.  Laurie.

Q.  Ms. Lambrix?

A.  Yes.

. . .

Q.  How long did that meeting [with Lambrix] last, do you remember?

A.  No, I don't.

Q.  What was discussed?

A.  Michael Carpenter's project.

Q.  What did she say?

A.  She said she was just wondering how everything went and what the association did and how we communicated with them, you know, how we got the job done and stuff like that.

. . .

Q.  Do you remember if you went to her office with your own documents?

A.  Yeah, we went with our folder.

Q.  Oh, so Cara [Thibeault] was there as well?

A.  Yeah.

(Docket # 68-3 at 66-68).  Lambrix did not object to this line of questioning.  (*Id*.).

In addition, Surace brought to his deposition a folder of documents relating to his work on the Carpenters' home.  Defendants' counsel, Minryu Kim ("Kim"), has represented that during the deposition she looked through Surace's folder and saw unspecified "correspondence" between Lambrix and Abrazo representatives.  (Docket ## 68-1 at ¶ 8; 82 at ¶ 8).  At the deposition, Surace refused to allow Kim to copy the documents in the folder.  (Docket # 82 at ¶ 9).  On November 23, 2010, Kim wrote Surace to demand copies of the documents, and copied Lambrix on the request.  (Docket # 68 at ¶¶ 10-11).  Lambrix did not object.  (*Id*. at ¶ 11).  On December 10, 2010, Surace faxed some documents to Kim, but did not include any correspondence to or from Lambrix.  (*Id*. at ¶ 12).

Plaintiffs' counsel did not object to production of the July 7 and July 11, 2010 emails until January 4, 2011.  (*Id*. at ¶ 14).  Plaintiffs provided a privilege log on January 14, 2011, identifying these communications as protected under the work product doctrine.  (*See* Docket # 100).

Plaintiffs have submitted an affidavit from Thibeault affirming that, as Abrazo's office manager, she "maintain[s] all the paperwork associated with the construction jobs on which we work."  (Docket # 77 at ¶ 2, Thibeault Affidavit).  Thibeault further states that she "double checked every piece of paper in the Carpenter's file" and that no correspondence to or from Lambrix is in the file.  (*Id*. at ¶ 4).  Thibeault further affirms that the file never contained any such correspondence.  (*Id*.).  Thibeault was not present during Surace's deposition.

B.  **Analysis**

Plaintiffs seek an order protecting both emails from disclosure on the basis that they are attorney opinion work product.  (Docket # 67).  Defendants argue that even if the July 7 email from Lambrix constitutes attorney work product, the protection was waived by plaintiffs' failure to object to the subpoena and defendants' counsel's inspection of Surace's folder at the deposition, as well as the substance of Surace's deposition testimony itself.  (Docket # 68-1 at ¶ 22).  With respect to the July 11 email, defendants contend that it does not constitute work product and that, even if it did, any privilege was waived for the same reasons.  (Docket ## 74 at 4, 5; 68-5 at 2-3).

1.  **Are the Emails Covered by the Work Product Doctrine?**

As an initial matter, I turn to whether either or both of the emails are covered by the work product doctrine.  The purpose of the attorney work product doctrine is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries."  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).

Rule 26(b)(3) provides:

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

14

> (ii) the party shows that it has substantial need for
> the materials to prepare its case and cannot, without
> undue hardship, obtain their substantial equivalent
> by other means.

Fed. R. Civ. P. 26(b)(3).  Thus, in order for a party "to assert privilege under the attorney work product doctrine, they must be able to show that the document[] [was] prepared (1) 'in anticipation of litigation' (2) by a party or its representative and (3) not in the ordinary course of business."  *Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 68 (S.D.N.Y. 2003).

The party asserting the privilege bears the burden of establishing it.  *In re Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992).  *Ipse dixit* assertions or unsupported conclusions are insufficient to establish the privilege.  *E.E.O.C. v. Johnson & Higgins, Inc.*, 1998 WL 778369, *4 n.4 (S.D.N.Y. 1998) (attorney's conclusory statement that documents reflected the attorney's "thoughts, impressions and strategies" and were therefore protected was insufficient to establish work product protection) (citing *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984)).  "Opinion" work product, or work product "implicating the mental impressions, conclusions, opinions or legal theories of an attorney," enjoys "near absolute immunity."  *In re Application of Minebea Co., Ltd.*, 143 F.R.D. at 499.

Here, the July 7 email from Lambrix qualifies as attorney work product.  The email sent by plaintiffs' attorney to a key non-party witness solicits information to be used in the revision of that witness's affidavit in opposition to defendants' motion for summary judgment.  Thus, it was unquestionably prepared in anticipation of litigation.  Plaintiffs further contend that the July 7 email qualifies as opinion work product because it summarizes Lambrix's notes of her

interview with Surace and reflects her impressions of the information she learned from him, as well as what information she believed should be emphasized in Surace's affidavit.  (Docket # 67, Memo. at 5-6).  I agree.  *Institute for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("[a] lawyer's notes of an interview of a non-party witness is classic work product and may contain both facts and mental impressions of the lawyer").

Whether the July 11, 2010 email from Thibeault to Lambrix qualifies as work product, however, is a closer question.  Courts have held that draft affidavits of parties to a litigation, prepared in consultation with counsel, are attorney work product.  *See*, *e.g.*, *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (attorney declaration submitted *in camera* to court regarding the drafting of unsigned affidavit was protected opinion work product); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-09 (D. Nev. 2005) (draft affidavit of employee of corporate defendant was protected under work product doctrine).  *But see Sequa Corp. v. Gelmin*, 1993 WL 276081, *4 (S.D.N.Y. 1993) (draft affidavits not protected by work product doctrine where no evidence that "affidavits were prepared with the intention that they remain confidential").  Further, draft affidavits of non-party witnesses also deserve work product protection.  *Institute for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. at 125 ("[a] lawyer's draft[] [affidavit], which ha[s] not been adopted or executed by the non-party witness, do[es] not lose [its] character as work product because a final executed version has been affirmatively used in the litigation"); *A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 49 (S.D.N.Y. 1990) (draft affidavit of

non-party witness was work product; court required disclosure of it, however, because opposing party demonstrated "substantial need" where witness lived overseas).

Plaintiffs have cited authority outside this Circuit for the proposition that "the work product doctrine does protect information relevant to the evolution of an affidavit [of a non-party witness], including but not limited to communications with the counsel relating to the affidavit, prior drafts of the affidavit, and any notes made by counsel while engaging in the process of drafting the affidavit." *Tuttle v. Tyco Elec. Installation Svcs., Inc.*, 2007 WL 4561530, *2 (S.D. Ohio 2007); *see, e.g.*, *Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) (draft affidavits of third parties, and counsel's correspondence with those witnesses about drafts, constitute attorney work product); *Boyer v. Gildea*, 257 F.R.D. 488, 493 (N.D. Ind. 2009) (communications between non-party witness and counsel regarding draft affidavit of witness were attorney work product); *United States v. Univ. Hosp., Inc.*, 2007 WL 1665748, *1 (S.D. Ohio 2007) (witnesses may not be questioned "about any role that counsel may have had in the evolution of an affidavit, about any communications with counsel relating to an affidavit, or about prior undisclosed drafts of an affidavit").  Neither party has cited, nor has this Court found, any authority in this Circuit directly addressing whether a communication from a third-party witness regarding the drafting of an affidavit is covered by the attorney work product doctrine, however.  *Cf. Institute for Dev. of Earth Awareness*, 272 F.R.D. at 125 (denying motion to compel "drafts of two affidavits and other materials exchanged between counsel and two non-party affiants," but not describing the "other materials" or discussing the theory under which they were protected).

On the other hand, communications from non-parties to counsel for parties in a lawsuit generally do not qualify as attorney work product. *Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. at 69 ("it is a stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party," noting, however, that "[t]o the extent that the [communications] reflect counsel's [litigation] strategy . . . , they would constitute attorney work product"). Similarly, Rule 26(b)(3) does not protect documents prepared by a non-party in preparation for a closely-related lawsuit. *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, *6 (S.D.N.Y. 2002) (citing cases). *But see Plew v. Limited Brands, Inc.*, 2009 WL 1119414, *2 (S.D.N.Y. 2009) (emails sent by non-party to defendants at direction of defendants' counsel qualified for work product protection).

In the case at bar, the July 11, 2010 email is from a non-party, Thibeault, to plaintiffs' counsel. Although the subject of the email relates to the drafting of an affidavit, the individual who sent the email is not the affiant, nor does the email purport to reflect the affiant's opinions or suggestions on the draft. Indeed, following oral argument, plaintiffs' counsel was permitted to supplement the record with evidence showing that Surace endorsed or adopted Thibeault's comments on his draft affidavit. No such supplemental filing has been made. More importantly, a careful review of both emails at issue in these motions reveals that Thibeault's email does not respond directly to the questions that Lambrix posed in her July 7 email; if it did, it might well qualify for protection. Rather, it simply contains a non-party's suggestions for changes and additions to the draft, which evidently were not incorporated.

On this record, I find that Thibeault's email should not be considered attorney work product. Although counsel contends that a comparison of Thibeault's email with the final

18

draft of the affidavit will reveal counsel's thoughts, opinions and mental processes (Docket # 67 at 6), I disagree.  At most, it reveals Thibeault's thoughts about the case.  There is no legal basis to shield from disclosure a non-party's thoughts about a litigation that do not reveal counsel's opinions or strategies.  Accordingly, plaintiffs must produce to defendants Thibeault's July 11, 2010 email by no later than **October 11, 2011**.

## 2.  Was the Work Product Protection Waived?

Having found that Lambrix's July 7, 2010 email qualifies as opinion work product, I must finally determine whether that protection has been waived.

"The privilege derived from the work-product doctrine is not absolute.  Like other qualified privileges, it may be waived."  *United States v. Nobles*, 422 U.S. 225, 239 (1975).  Unlike the attorney-client privilege, disclosure to a third party will not automatically waive the work product privilege; rather, "a waiver of work product protection occurs when the covered materials are used in a manner that is inconsistent with the protection."  *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169-70 (S.D.N.Y. 2002); *see also Curto v. Med. World Commc'ns, Inc.*, 2011 WL 1793259, *5 (E.D.N.Y. 2011).  Disclosure to an adversary of work product protected material will generally effect a waiver.  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993); *Bodega Inv., LLC v. United States*, 2009 WL 1456642, *4 (S.D.N.Y. 2009); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. at 170 ("[o]ne circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary").  A finding of waiver in such a circumstance reinforces the policy that the work product doctrine exists to "promote the adversary system by safeguarding the fruits o[f] an attorney's trial

preparation from the discovery attempts of an opponent." *Bank of Am., N.A.*, 212 F.R.D. at 170

(quoting *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

Under certain circumstances, an inadvertent disclosure to an adversary will not

result in a waiver; rather, the relevant inquiry is whether the disclosing party "revealed any part

of a privileged communication while seeking to withhold the balance of that communication . . .

[as] a deliberate stratagem to gain a tactical advantage." *Briese Lichttechnik Vertriebs GmbH v.*

*Langton*, 272 F.R.D. 369, 372 (S.D.N.Y. 2011) (no waiver where disclosure was inadvertent and

plaintiffs sought return of the disclosed documents); *United States v. Treacy*, 2009 WL 812033,

*2 (S.D.N.Y. 2009) (no waiver where disclosure was not used as both sword and shield).

Finally, Rule 502(a) of the Federal Rules of Evidence provides:

> The following provisions apply, in the circumstances set out, to
> disclosure of a communication or information covered by the
> attorney-client privilege or work-product protection.
>
> (a) When the disclosure is made in a Federal proceeding or to a
> Federal office or agency and waives the attorney-client privilege or
> work-product protection, the waiver extends to an undisclosed
> communication or information in a Federal or State proceeding
> only if:
>
>> (1) the waiver is intentional;
>>
>> (2) the disclosed and undisclosed communications
>> or information concern the same subject matter; and
>>
>> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). According to the Advisory Committee Notes:

> The rule provides that a voluntary disclosure in a federal
> proceeding or to a federal office or agency, if a waiver, generally
> results in a waiver only of the communication or information
> disclosed; a subject matter waiver (of either privilege or work

product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.  *See, e.g.*, *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage).  Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.  It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver.  *See* Rule 502(b).

Fed. R. Evid. 502 advisory committee's note; *see also Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) (characterizing exception as "narrow"); *Bear Republic Brewing Co. v. Cent. City Brewing Co.*, 2011 WL 2263344, *4 (D. Mass. 2011) (Rule 502(a)'s "requirement that the 'waiver' be 'intentional' (rather than the 'disclosure' be 'intentional') was added . . . to ensure that there would be no subject-matter waiver unless the party knew that the disclosure would operate as a waiver").

Here, defendants contend that any work product protection accorded the email was waived when defendants' counsel reviewed correspondence between Lambrix and Surace that was contained in the folder that Surace brought to his deposition.  The shortcoming in this argument is that defendants' counsel has not, and presumably cannot, affirm that she saw the July 7 email in the folder.  Moreover, Thibeault has represented that the folder never contained a copy of the email.  Defense counsel's recollection is simply too unclear to justify a finding of waiver.

Nor do I find that Surace's deposition testimony effected a waiver.[7]  Surace testified, without objection by Lambrix, that he and Thibeault met to discuss the concrete pad project and that he "may have" provided comments regarding the draft affidavit.  He answered questions about "what was discussed" and "what [Lambrix] sa[id]" at the meeting.  Specifically, Lambrix asked "how everything went and what the association did and how we communicated with them, you know, how we got the job done and stuff like that."  (Docket # 68-3 at 67).  In other words, Surace testified about (1) the discussion between Lambrix and himself at their meeting (which Thibeault also attended) and (2) *his* comments on the draft affidavit.

Whether Surace's testimony about these communications with Lambrix waived the work product protection for Lambrix's subsequent July 7 email communication to him turns on the three-part test set forth in Rule 502(a) because the email is a "undisclosed communication" about which Surace did not testify.  *See* Fed. R. Evid. 502(a) ("[w]hen the disclosure is made . . . and waives the . . . work product protection, the waiver extends to an undisclosed communication . . . only if" the three-part test is met).  Assuming under the first prong that the waiver should be considered intentional, I find that the second and third elements of the test are not met.  First, I find that the email should not be considered the same subject as Surace's testimony – the meeting with Lambrix and his comments on the draft affidavit.  In

---

[7] Defendants also argue that the privilege was waived by plaintiffs' failure to timely provide a privilege log in response to the subpoena to Abrazo.  (Docket # 68-5 at 5 n.2).  Setting aside the issue of whether plaintiffs were somehow obligated to provide a privilege log for a subpoena directed to a non-party, plaintiffs eventually did provide a privilege log identifying the two emails two months following Surace's November 2010 deposition.  (Docket # 100).  Although a belated production of a privilege log may result in a waiver, many courts require a showing of prejudice prior to finding a waiver.  *RMED Int'l v. Sloan's Supermarkets*, 2003 WL 41996, *3 (S.D.N.Y. 2003) (collecting cases).  In this case, defendants have not identified any prejudice resulting from the two-month delay in producing the privilege log.  Accordingly, in my discretion, I decline to find that the work product protection was waived under this theory.

contrast, the email summarized Lambrix's notes and impressions of the information she learned from Surace during their meeting and posed follow-up questions about the draft affidavit she forwarded with her email.

Moreover, I do not find that the email should "in fairness . . . be considered together" with Surace's testimony.  *See* Fed. R. Evid. 502(a)(3).  Consideration of the testimony alone, without the email, would not result in a "selective and misleading presentation of evidence to the disadvantage of the adversary."  *See* Fed. R. Evid. 502 advisory committee's note. Defendants' counsel questioned Surace about his discussions with Lambrix at their meeting. Surace answered by describing the general topics of discussion, and counsel asked few follow-up questions about those discussions, despite the opportunity and right to do so.  Having reviewed both Surace's testimony and Lambrix's email, I find that there is nothing apparently selective or misleading about his testimony, and thus no need "in fairness" to disclose Lambrix's subsequent email.  *See*, *e.g.*, *Coleman v. Sterling*, 2011 WL 2005227, *3 (S.D. Cal. 2011) (finding subject matter waiver where summary report of investigation was disclosed and affirmatively used in litigation); *U.S. Airline Pilot Assoc. v. Pension Benefit Guar. Corp.*, 274 F.R.D. 28, 32-33 (D.D.C. 2011) (disclosure of investigative report waived privilege as to "scope, conduct, participants and conclusions of the investigations"); *GATX Corp. v. Appalachian Fuels, LLC*, 2010 WL 5067688, *6-7 (E.D. Ky. 2010) (finding, pursuant to Rule 502(a), that any waiver of privilege effected by production of certain documents "does not extend to any other documents withheld" as privileged; "subject-matter waiver in this case would be inconsistent with the purposes of Rule 502(a)"); *United States v. Treacy*, 2009 WL 812033 at *2 (no waiver where disclosure was not used as both sword and shield).

Finally, defendants have failed to establish a compelling need for disclosure of the July 7, 2010 email. *In re Grand Jury Proceedings*, 219 F.3d 175, 192 (2d Cir. 2000) (while ordinary work product must be disclosed upon a showing of "substantial need" by the requesting party, opinion work product requires "at a minimum . . . a highly persuasive showing [of need]") (quoting *United States v. Adlman*, 134 F.3d at 1204). Accordingly, defendants' motion to compel production of the July 7, 2010 is denied, and plaintiffs' motion for a protective order preventing disclosure of that email is granted.

## CONCLUSION

For the reasons stated above, I recommend that the district court deny defendants' motion to amend their answer **(Docket # 65)**, except to permit the proposed minor modifications to the second and third affirmative defenses. Defendants' motion to compel **(Docket # 66)** is **DENIED as MOOT**. Plaintiffs' motion for a protective order **(Docket # 67)** and defendants' motion to compel **(Docket # 68)** are **GRANTED in PART and DENIED in PART**. Plaintiffs shall produce the July 11, 2010 email to defendants' counsel by no later than **October 11, 2011**.

    *s/Marian W. Payson*
    MARIAN W. PAYSON
    United States Magistrate Judge

Dated: Rochester, New York
        September   29  , 2011

24

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

     **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

     **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

     The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See e.g. Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

     <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

     The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>**Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**</u>

     Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                       *s/Marian W. Payson*
                        MARIAN W. PAYSON
                        United States Magistrate Judge

Dated: Rochester, New York
       September   29  , 2011